UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

TRAVIS DELANEY WILLIAMS,

      Plaintiff,

      v.                                  Case No. 20-C-707

SHERYL KINYON, DANIELLE HAGAN,
ERIN WHIRLE, SANDRA MCARDLE,
JAMIE ADAMS, JULIA PAYNE,
ANDREA TITLBACH, J. HILL, and
JOHN DOE,

      Defendants.

___

## SCREENING ORDER
___

      Plaintiff Travis Delaney Williams, who is currently serving a state prison sentence at the Wisconsin Secure Program Facility and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on Williams' motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

      Williams requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Williams filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and was assessed an initial partial filing fee of $2.16. Williams' moved to waive his obligation to pay an initial partial filing fee. The court

denied his motion, explaining that, although he did not have assets to pay the fee, he had means to do so. Williams filed a motion for reconsideration, but then, a couple of weeks later, paid $3.00 toward the filing fee. Accordingly, the court will grant his motion for leave to proceed without prepaying the filing fee and will deny as moot his motion for reconsideration.

### SCREENING OF THE COMPLAINT

The court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, plaintiffs are required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

A complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Williams alleges that, early in the morning of June 24, 2019, he fell as he walked from his bed to his toilet, injuring his knee, left arm, and elbow. Williams asserts he pressed the emergency call button and told John Doe officer that his arm and knee were swollen and very painful. He also told John Doe officer that he falls often and frequently injures himself. John Doe officer told Williams he would call health services.

About twenty minutes later, defendant Sheryl Kinyon, a nurse and the assistant health services manager, looked into Williams' window. Williams asserts he told her that he fell and injured himself, and he used his right arm to raise his injured arm so she could see. Williams asserts she walked a short distance away and began to talk to defendant officer Danielle Hagan, who was preparing to distribute staff-controlled medication. Williams asserts he told Kinyon that he may have broken or fractured his arm, could not use his elbow, and was in a lot of pain. Williams asserts that Kinyon ignored him and kept talking to Hagan for another three to four minutes. Kinyon then left without further interaction with Williams.

Hagan then came to Williams' cell and asked him what medication he wanted. He told her he needed medical attention for his arm and knee. Hagan told him that Kinyon was aware of his injuries, but Williams asked Hagan to call health services again. Hagan agreed to do so and continued distributing medications. Williams asserts Hagen did not call health services.

3

Less than an hour later, defendant Jamie Adams and Kinyon came back to the vestibule in front of Williams' cell to talk to another inmate. Williams asserts that he got Adams' attention and told her about his injuries, which had happened about an hour earlier. Williams says Adams ignored his please for "emergent help" and instead asked him if he had filled out a blue slip. ECF No. 1 at 5. Williams told Adams, "[Y]ou're the health services manager and a nurse. I just got this injury you see the swelling on my arm. The guards stated they called HSU and shortly after that Kinyon shows up so I thought she was here to respond to my injury. . . . Hagan stated she would call HSU, and again b---- I thought you were here responding to my injury. You are a nurse right?" *Id.* at 5. In response, Adams and Kinyon walked away laughing. Williams does not clarify if or when he submitted a health services request as Adams instructed.

Williams asserts that, three days later, he saw nurse Erin Whirle. It is not clear why Williams had an appointment with Whirle (Williams suffers from many health conditions), but he alleges that she could see the injury on his arm and knee. She prescribed a small ice pack (about the size of a cigarette pack) for the swelling. Whirle told Williams she would refer him to see the provider.

About a week after the incident, on July 1, 2019, defendant Sandra McArdle saw Williams for an unrelated issue. She refused to examine Williams' injuries from the fall, telling him that Whirle had not documented that he needed to be examined for that reason. Williams says he was in a lot of pain and could not bend his elbow at all. He asserts that his elbow was three times its normal size. Williams' knee was in a similar condition; he says he had to use his wheelchair and could not use his walker.

Williams was not seen for his injuries until August 21, 2019, nearly two months after the incident. Williams asserts that he told McArdle that he had been requesting to be seen for his

injuries, but his requests had been ignored. Williams also told her that he believed she, Adams, and Kinyon were "throwing away [his] request because [he] cuss[ed] [them] out and this is all 3 of [their] forms of retaliation to make [him] suffer since neither of [them] can get an officer to write [him] a conduct report for disrespect so [they] will make [him] suffer." ECF No. 1 at 7. After McArdle denied his accusation, Williams called her "a lying B." *Id.*

McArdle ordered ice and x-rays and told him to use Celebrex for the pain. Williams explains that Celebrex was not available to him at that time. He asserts that he explained to her on July 1 and again on August 24 that he was not able to get his prescription refilled. McArdle told Williams she would be notified if a refill order was needed. He explains that his requests for refills were denied many times and that McArdle and Adams knew that he had nothing to address his pain. He finally was able to get pain medication in late August. He says he suffered in pain for three months.

Williams alleges that he filed an inmate complaint about injuring himself and indicated that he had spoken to a third-shift officer and Hagan about his injuries. He asserts that defendant Julia Payne, the inmate complaint examiner, "deliberately investigated the complaint to defeat it." ECF No. 1 at 9. According to Williams, Payne spoke to someone who had no personal knowledge about the incident. Payne allegedly did not speak to the John Doe officer or Hagan when investigating Williams' inmate complaint. Williams alleges that this is Payne's practice. "She comes to a meeting of the minds to conspire and defeat [his] complaints with false statements by her and her co-conspirators." *Id.*

Williams also alleges that defendants Andrea Titlbach and J. Hill, both business office employees, refused to allow him to make copies of his original documents. Williams asserts that

5

Case 1:20-cv-00707-WCG   Filed 07/28/20   Page 5 of 11   Document 17

the corrections complaint examiner frequently denies his appeals because Williams fails to provide evidence warranting overturning the inmate complaint examiner's decisions.

**THE COURT'S ANALYSIS**

To state a claim under the Eighth Amendment, a plaintiff must allege that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). "A delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain." *Id.* at 777-78.

Williams states a claim under the Eighth Amendment against Kinyon, Adams, and McArdle based on his allegations that they ignored his verbal and written requests that they treat his arm and knee injuries and address his complaints of pain. He also states a claim of deliberate indifference against Whirle. According to Williams, she acknowledged that he should be seen by a provider and told him she would make the required referral; however, he was later informed that she never entered the referral. As a result of her alleged failure to refer Williams to a provider, his treatment was delayed and his suffering prolonged. Development of the record is necessary to determine whether her failure to enter the referral was a result of negligence (which does not violate the Constitution) or whether it was intentional. At this point, Williams' allegations are sufficient for him to proceed against her.

William may not, however, proceed on a retaliation claim against Kinyon, Adams, and McArdle. "To prevail on a First Amendment retaliation claim, [Williams] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action."

6

*Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citations omitted). Williams alleges that Kinyon, Adams, and McArdle ignored his verbal and written requests for medical treatment and made him suffer because he had cussed them out on prior occasions. Cussing out prison officials is not protected speech. "Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners. . . . Insubordinate, verbal remarks to prison staff are inconsistent with the status of a prisoner." *Caffey v. Maue*, 679 F. App'x 487, 490 (7th Cir. 2017) (citations omitted). Because Williams did not engage in activity protected by the First Amendment when he cussed out Kinyon, Adams, and McArdle, he fails to state a retaliation claim against them.

Williams also fails to state a claim of deliberate indifference against the John Doe officer and Hagan based on his allegations that they did not immediately report his injuries to health services. Even assuming Williams' allegations are true, their failure to contact health services did not harm Williams. Williams reports that, within twenty minutes of reporting his fall to the John Doe officer, Kinyon arrived at his cell and Williams was able to give her a full account of what happened and the injuries he suffered. After Williams asked Hagan to call health services, she reminded him that Kinyon was already aware of his injuries, and in any event, Kinyon and Adams were near his cell within an hour of him speaking to Hagan. Williams was able to interact (albeit briefly) with Adams and once again asked for help.

As such, the delay in treatment that Williams experienced was not caused by the officers failing to relay his needs to health services; the delay was caused by Kinyon and Adams allegedly ignoring him after he asked for help. As the Seventh Circuit has explained, "there is no tort—common law, statutory, or constitutional—without an injury, actual or at least probabilistic." *Jackson v. Pollin*, 733 F.3d 786, 790 (7th Cir. 2013). Because Williams' allegations do not give

7

rise to a reasonable inference that the officers' inaction resulted in an injury to Williams, Williams fails to state a claim against them.

Williams also fails to state a claim against Payne, the inmate complaint examiner, based on his allegations that she defeated his inmate complaint by conducting a poor investigation. The Seventh Circuit has consistently held that "[o]nly persons who cause or participate in the violations are responsible," and "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Payne's allegedly poor investigation and denial of Williams' inmate complaint did not cause or contribute to the delay in treatment, so he fails to state a claim against her.

Williams also alleges that Payne has a practice of poorly investigating inmate complaints so that she can deny them. Such a claim, however, would involve questions of law and fact not relevant to the claims Williams states in this case. To prove such a claim, Williams would have to provide evidence of Payne's investigations of his and other inmates' complaints, none of which would be relevant to Williams' claim that Kinyon, Adams, and McArdle were deliberately indifferent to his serious medical needs. Accordingly, if Williams wants to sue Payne on this basis, he needs to do so in a separate lawsuit. *See George*, 507 F.3d at 607 ("Unrelated claims against different defendants belong in different suits.").

Finally, Williams fails to state a claim against Titlbach and Hill based on his allegations that the corrections complaint examiner denied his appeal because Titlbach and Hill refused to provide him with copies of documents he needed to support his appeal. Williams does not have a constitutional right to grievance procedures. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Also, while prisoners have a constitutional right of access to the courts, to state such a claim, a plaintiff must plead that the defendants' acts prevented him from pursuing a nonfrivolous

8

Case 1:20-cv-00707-WCG   Filed 07/28/20   Page 8 of 11   Document 17

claim. *Flournoy v. Schomig*, 152 F. App'x 535, 539 (7th Cir. 2005). Because Titlbach and Hill's refusal to make copies did not prevent Williams from pursuing his claims in court, he cannot state an access-to-courts claim against them.

**ORDER**

**IT IS THEREFORE ORDERED** that Williams' motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Williams' motion for relief from judgment (ECF No. 14) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Danielle Hagan, Julia Payne, Andrea Titlbach, J. Hill, and John Doe are **DISMISSED** because Williams fails to state a claim against them.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Williams' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Sheryl Kinyon, Jamie Adams, and Erin Whirle.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Kinyon, Adams, and Whirle shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon defendant Sandra McArdle pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2)–(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely

9

because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The U.S. Marshals Service will give Williams information on how to remit payment. The court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that the McArdle shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $347.00 balance of the filing fee by collecting monthly payments from Williams' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Williams is transferred to another institution, the transferring institution shall forward a copy of this order along with Williams' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the prisoner is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

and Oshkosh Correctional Institution.  Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter.

Williams is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.  Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Dated at Green Bay, Wisconsin this __28th__ day of July, 2020.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge